No. 45,402

Jack Richards Aircraft Sales, Inc., *Appellee,* v. J. C. Vaughn, *Appellant.*

(457 P. 2d 691)

Opinion filed August 5, 1969.

*Walter B. Patterson,* of Fort Scott, argued the cause, and was on the brief for the appellant.

*Edward A. McConwell,* of Prairie Village, argued the cause, and *Thad E. Nugent,* of Prairie Village, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: This is an action for damages by the plaintiff, Jack Richards Aircraft Sales, Inc., against defendant J. C. Vaughn because of an alleged breach of contract involving the sale of an

airplane. After trial without a jury in district court, judgment was entered in favor of plaintiff, from which defendant now appeals.

A brief recital of the facts will set the stage for discussion of the questions presented.

Plaintiff was an Oklahoma corporation engaged in the sale of aircraft, and in 1964 had an Aero Commander 520 twin-engine airplane for sale. In early January of that year, plaintiff, through its duly authorized salesman, Stan Bernstein, entered into negotiations with defendant for the purchase of the aircraft. On January 8, Bernstein flew the plane to Nevada, Missouri, where he met defendant, and they proceded to Joplin for lunch and further discussion about the contemplated purchase. This meeting culminated in the signing of a "Purchase Order" by Bernstein and defendant, a copy of which follows:

As disclosed by the written instrument, the purchase price for the Aero Commander was $30,950. Defendant was allowed the sum of $4,450 as a trade-in on a single-engine Swift aircraft owned by him. Defendant gave Bernstein a check for $500 as down payment, leaving a balance due of $26,000. Defendant also signed an application for title to the new aircraft for filing with the F. A. A.

A few days later (January 13) Bernstein met defendant at Fort Scott, Kansas. Thereupon, they drove to Prescott and received

from the cashier of the Prescott State Bank (where defendant did business) a letter of credit, and also defendant's personal financial statement showing a net worth in excess of $270,000. These documents were to be used by Bernstein in aiding defendant to secure any financing necessary for the purchase. Defendant also executed and delivered to Bernstein a bill of sale on the Swift aircraft. In the meantime the new plane was being repainted and new tires put on in accordance with the terms of the purchase order.

The trial court found from evidence adduced by both parties that plaintiff was *not* to finance the purchase of the aircraft in question, but was only to assist defendant in seeking credit sources. Bernstein, a native of Chicago, even went so far as to contact a financing institution in that city which, in turn, contacted defendant's bank. At any rate, no difficulty was encountered with respect to the financing.

Within a few days after January 13, 1964, defendant decided not to go through with the transaction. He notified Bernstein by telephone that his banker advised him against the purchase and that he (defendant) "didn't want the plane at that time." There was testimony defendant suggested plaintiff keep his check and the trade-in aircraft and credit his account in anticipation of a later date of delivery. Plaintiff refused to accede to this arrangement, and defendant stopped payment on his check. At or before this time when plaintiff attempted to file the bill of sale on the Swift aircraft with the F. A. A., an unpaid mortgage on the plane was discovered, despite defendant's certification in the bill of sale previously executed that the plane was "not subject to any mortgage or encumbrance." At some later time defendant apparently satisfied the mortgage, and clear title was finally obtained. The bill of sale was subsequently registered by the F. A. A.; however, defendant refused to relinquish possession of the craft to plaintiff.

Defendant took no further steps to consummate the transaction, and on December 31, 1964, plaintiff filed its action, claiming damages for breach of contract. Shortly after filing the lawsuit plaintiff sold the Aero Commander to a third party for $22,000, after having again repainted the craft to satisfy the new buyer. The resale was made after repeated demonstrations to prospective purchasers and also after advertising of the plane in national trade journals.

In his answer to plaintiff's petition for damages defendant set up as a defense that the purchase order was procured by fraud on the

part of plaintiff, and further alleged his disaffirmance of the entire transaction. Defendant also counterclaimed for return of the title to the Swift aircraft, and actual and punitive damages.

After trial, the district court, on June 14, 1967, rendered a comprehensive memorandum opinion, setting forth findings of fact substantially as recited herein, and concluded that the purchase order was a binding agreement on both parties; that plaintiff had properly minimized its loss by resale of the airplane; that as a result of defendant's breach of the contract plaintiff sustained a loss in the amount of $5,125 ($4,000 in the balance of the purchase price plus $1,125 for the cost of repainting the plane); and that plaintiff was entitled to the possession of the Swift aircraft.

Defendant first contends the court erred in overruling his motion for summary judgment and also his motion for directed verdict at the close of all the evidence because the purchase order on its face was so incomplete, indefinite and uncertain that it did not rise to the dignity of an agreement binding the parties contractually. Defendant points out alleged deficiencies in the instrument, and in particular the reference to "Time," inasmuch as the terms of financing were not set forth in writing. We do not agree.

As a general rule, in order for a written agreement to be binding it must be sufficiently definite in its terms and requirements as to enable a court to determine what acts are to be performed and when performance is complete. This rule, however, cannot be blindly followed as a measuring stick for determining the sufficiency and definiteness of the terms of a contract. Where a purported contract is so vague and indefinite that the intention of the parties cannot be ascertained therefrom it is unenforceable; but absolute certainty is not required—only reasonable certainty is necessary. A contract may contain some formal imperfections or be lacking in detail, but it will not fail for uncertainty if the court can ascertain the terms and conditions by which the parties intended to be bound, and thus carry their intentions into effect. The fact that the exact meaning of language used can be ascertained only by consideration of extrinsic evidence does not render the agreement unenforceable for indefiniteness or uncertainty. Just recently we said that when it is apparent from the provisions of a written instrument that they are ambiguous, incomplete or silent as to a particular matter, parol evidence is admissible to clear up the ambiguity and to show the terms of the actual agreement in its entirety. (*Culp v.*

*Bloss,* 203 Kan. 714, 457 P. 2d 157.) For a compilation of authorities and a full discussion of the requisite certainty and completeness essential to create a binding agreement, see, *Hays v. Underwood, Administrator,* 196 Kan. 265, 411 P. 2d 717. Also, see, 17 Am. Jur. 2d, Contracts § 75, *et seq.;* 17A C. J. S., Contracts § 294, *et seq.*

We believe the purchase order in question sufficiently identified the aircraft, the specific equipment to be included, the work to be done prior to delivery, the trade-in allowance on defendant's airplane, the down payment and balance to be paid. The reference to "Time" as the term of payment was subject to explanation by extrinsic evidence, which was admitted by the trial court. After testimony on the point, the court found that the parties had agreed plaintiff's obligation was to help secure the financing if necessary. Applying the foregoing rules, we have no difficulty in upholding the district court's conclusion the instrument was sufficiently definite and certain in its terms to create a binding agreement between the parties. For that matter, even if we accept defendant's suggestion that the instrument was merely a preliminary memorandum, that does not necessarily imply the parties had not already bound themselves to a definite and enforceable contract whose terms could be changed only by mutual consent. (See *H. B. Zachry Company v. O'Brien,* 378 F. 2d 423 [10th Cir. 1967].)

Defendant next complains the trial court erred in excluding certain testimony offered in support of his defense that the purchase order was induced by fraud. Defendant's argument on this point overlaps to a degree his previous contention that the writing did not constitute a binding contract between the parties. Closer examination, however, leads us to believe defendant is really attempting, through use of the fraud exception to the parol evidence rule (see, *Stapleton v. Hartman,* 174 Kan. 468, 257 P. 2d 113; *Stegman v. Professional & Business Men's Life Ins. Co.,* 173 Kan. 744, 252 P. 2d 1074), to prove, in effect, an oral "side agreement" materially at variance with the written purchase order. Defendant directs our attention to evidence there was an oral understanding that either party could cancel the agreement if he desired to do so; that plaintiff was to arrange the financing; that the down payment would be returned if defendant's banker disapproved the transaction and the "financing didn't go through." The record is confusing on just how much of this evidence was actually excluded. The trial court con-

cluded, and we think properly so, there was no evidence of fraud, and the proffered testimony tended not only to vary, but to nullify, the written agreement entered into by the parties on January 8, 1964.

Without going into great detail about each of the numerous items defendant contends were embodied in the "side agreement," we are of the opinion the court's ruling on the admissibility of evidence did not result in prejudicial error to the defendant. The defense was built almost exclusively on the proposition that the written contract (purchase order) was procured or induced by the fraudulent and false representations of plaintiff's salesman, Bernstein. The only evidence offered in support thereof, however, was the purported "side agreement" which, in effect, was that the parties were not to be bound by the written agreement "if for any reason either party decided not to go ahead with the alleged sale"— directly contrary to the intention of the parties as expressed and implied by the terms of the written purchase order itself. Under defendant's theory, the purchase order did not mean what it said and was a complete nullity. (See, *Cherry v. Joyce,* 168 Kan. 475, 213 P. 2d 1010.) Such argument is tantamount to saying defendant was induced to execute the instrument, which on its face was binding, with full knowledge that neither party unequivocally and without reservation intended to perform in accordance with the terms of the writing. This, we believe, brings the case within the spirit of the rule stated in *Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 360 P. 2d 23:

"Where an oral promise is made contemporaneously with the execution of a written contract, to the promisee's knowledge directly at variance with the written contract, the oral promise is merged in the written contract, and the promisee cannot invoke the rule that fraud may be predicated upon a promise made without the intention of performance." (Syl. ¶ 1.)

Broadly stated, the parol evidence rule excludes evidence of prior or contemporaneous oral agreements to contradict or to modify a written contract. Such evidence, to be admissible for the purpose of proving fraud, and thereby defeat the written agreement, must tend to establish some independent fact or representation, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, *and not a promise directly at variance with the promise of the writing.* (*Edwards v. Phillips Petroleum Co.,* supra, and authorities therein cited.) A succinct statement of the

law applicable to the fraud claim here is found in 32A C. J. S., Evidence § 979, p. 473:

". . . parol evidence is inadmissible when the alleged fraud concerns a promise or representation directly at variance with the terms of the written instrument. . . ."

Defendant further urges that the trial court erred in its computation of damages due plaintiff. As nearly as we can ascertain, defendants contends the market value of the aircraft at the time he repudiated the sale (January 1964) was substantially more than $22,000, the price for which plaintiff eventually sold the craft approximately nine months later. The argument is completely unfounded and may be answered, in part at least, in the language of the trial judge, as found in his memorandum opinion on the point:

"A party who is injured by the breach of a contract is entitled to compensation for the injury sustained and is to be placed, so far as it can be done by a money award, in the same position he would have occcupied if the contract had been performed; the seller is entitled to the benefit of his contract. (46 Am. Jur. 756, *Sales,* Section 615.) And where the buyer repudiates the contract, the seller may liquidate his damages by a resale of the personalty; if the sale is fairly conducted and there is no evidence of unfairness, the amount received on the resale is accepted as conclusive on the question of market value, and the measure of the seller's recovery is the difference between the agreed price and the amount received on the resale, plus the expenses properly incidental to such resale. (46 Am. Jur. 710, *Sales,* Section 566.) This is the rule in Kansas; one injured by a breach of contract has a duty to minimize his loss to the extent reasonably possible under the existing circumstances. (*Cain v. Grosshans & Petersen, Inc.,* 196 Kan. 497 at 501, 2, 431 P. 2d 98.)"

(Also, see, *International T. & R. Corp. v. Benscheidt,* 141 Kan. 416, 41 P. 2d 737; 46 Am. Jur., Sales § 566, *et seq.;* 78 C. J. S., Sales, § 426, *et seq.*)

Generally, a seller is under a duty to resell the article of sale within a reasonable time after breach or repudiation of the contract by the buyer. If the seller acts prudently and with reasonable care and judgment, the time of resale is, to a large extent, within his discretion. (46 Am. Jur., Sales § 574; 78 C. J. S., Sales § 429. See, *Anderson-Thompson, Inc. v. Logan Grain Co.,* 238 F. 2d 598 [10th Cir. 1956].)

Here, the resale by plaintiff of the Aero Commander cannot be said to have been unreasonably delayed. There was evidence that after repudiation of the contract the market value of the aircraft diminished considerably below the figure for which it was finally

sold. Plaintiff, in an obvious good-faith effort to minimize the amount of its loss, advertised the plane in various publications and magazines, and in addition, demonstrated the craft to more than a dozen potential buyers before finally selling it for $22,000. Resale at this figure would appear to have come through plaintiff's diligence to obtain the best price possible on the market. There is nothing to indicate the resale was made in other than a fair and reasonable manner, or that the plaintiff acted other than in the exercise of its best judgment as to the time the sale was finally consummated. Under the circumstances, the trial court was justified in accepting the resale price as the value of the aircraft in computing damages.

Other points raised in defendant's brief have been examined and found to be without substance.

No prejudicial error having been shown, the judgment is affirmed.