**METAL TRADING SERVICES OF COLORADO, INC., Plaintiff,**

**Republic Alloys, Inc., Plaintiff–Intervenor,**

v.

**TRANS–WORLD SERVICES, INC., and Miami County National Bank, Defendants.**

**No. 89–2516–S.**

United States District Court, D. Kansas.

Dec. 4, 1991.

---

Eldon J. Shields, Gates & Clyde, Chtd.,
Overland Park, Kan., Gregory M. Garvin,

David R. Nachman, Brown & Thiessen, P.C., Kansas City, Mo., for plaintiff.

Richard C. Wallace, Evans & Mullinix, Kansas City, Kan., Carl W. Hartley, Hartley, Nicholson & Hartley, P.A., Paola, Kan., for defendants.

David R. Smith, Payne & Jones, Chtd., Overland Park, Kan., for intervenor-plaintiff.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on Miami County National Bank's ("bank") motions for summary judgment on all claims by Metal Trading Services of Colorado, Inc., ("Metal Trading") and Republic Alloys, Inc. ("Republic Alloys"). Metal Trading and Republic Alloys shipped goods to defendant Trans–World Services, Inc. ("Trans–World") for which they have not received payment. Plaintiffs allege they shipped the goods in reliance upon the bank's credit reference obtained through separate phone conversations with Robert Weatherbie ("Weatherbie"), executive vice-president of the bank. The substance of the plaintiffs' claims is negligent and fraudulent misrepresentations and omissions by the bank during the phone conversations with the respective plaintiffs.

## STATEMENT OF FACTS

Metal Trading and Republic Alloys are out of state corporations engaged in the scrap metal business. Trans–World was a Kansas corporation located in Miami County, Kansas. The parties represent that Trans–World is no longer in business. On January 25, 1989, Jack Tharp, an employee of Republic Alloys, called Robert Weatherbie to discuss Republic Alloy's opportunity to do business with Trans–World and to get financial information to support the credit-worthiness of Trans–World. The substance of the conversation was set forth by Jack Tharp in his deposition and, for the purpose of the summary judgment motion, was not controverted.

Robert J. Weatherbie responded in a positive manner concerning the possibility of Republic Alloys, Inc. developing a business relationship with Trans–World Services, Inc. Robert J. Weatherbie stated that Trans–World Services, Inc. had been a long-term customer and that as he saw the situation, business was moving along in a very satisfactory fashion. Robert J. Weatherbie said there had been no financial problem that the bank experienced with Trans–World Services, Inc. and that The Miami County National Bank of Paola, Paola, Kansas, had given a credit line of 6 digits, which had been maintained and fulfilled and that Trans–World Services, Inc. had met its obligation on a very good standing basis. Robert J. Weatherbie stated that he didn't feel there would be any problem with Trans–World Services, Inc. being able to meet their financial obligations on the basis of truckload quantities.

The telephone conversation lasted approximately seven minutes.

On February 7, 1989, Jack Sweibish, the chief executive officer of Metal Trading, also called Weatherbie to discuss Trans–World's credit-worthiness. This phone call lasted about six minutes, the substance of which is similar to the conversation between Weatherbie and Jack Tharp.

Both Metal Trading and Republic Alloys shipped truckloads of metal to Trans–World, and neither was paid for the goods. It is undisputed that no representations were made to either plaintiff that the bank would guarantee payment of the invoices or would forego enforcing the bank's security interest in the inventory or accounts receivable in the absence of payment by Trans–World.

At a later date, the bank discovered that Vernon Claiborne, the president of Trans–World, had falsified financial statements and copies of tax returns provided to the bank. This significantly inflated Trans–World's financial condition, which at the time of the phone calls was not strong. Neither plaintiff did any further investigation of Trans–World's financial condition beyond talking to the bank and Vernon Claiborne.

## LEGAL STANDARDS

 A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

 For the negligence aspect of the plaintiffs' claims, they must establish the bank owed them a duty of care which it breached, they were damaged, and there is a causal connection between the duty breached by the bank and the plaintiffs' damages. *Tersiner v. Union Pacific R. Co.*, 740 F.Supp. 1519, 1524 (D.Kan.1990). As stated by the court, "The occasions are extremely rare where a court is justified in taking the case from the jury and deciding the questions of negligence and proximate cause as a matter of law." 740 F.Supp. at 1524. Only if the evidence is susceptible to one inference and there are no issues of fact should the court enter judgment in a negligence case. *Id.* Even when the facts are undisputed, it is often necessary for the trier of facts to determine the reasonableness of the conduct under the circumstances of the case. *Id.*

 For plaintiffs' fraud claims, they must prove the statements made by Weatherbie were untrue statements of material fact, known by Weatherbie to be untrue when he made them, made with the intent to deceive the plaintiffs or made with reckless disregard for the truth, and the plaintiffs justifiably relied upon the misrepresentations and acted to their injury or damage. *Nordstrom v. Miller*, 227 Kan. 59, 605 P.2d 545, 551–52 (1980). Actionable fraud may include concealment of facts or omissions which legally or equitably should be revealed, as well as affirmative misstatements. *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 738 P.2d 1210, 1229 (1987). To prove causation in a fraud case, the plaintiffs must prove they relied upon misstatements or omissions made by the bank, and that reliance resulted in their injury. 738 P.2d at 1231. The reliance element in a fraud claim serves as the cause in fact by inducing a party to act or refrain from acting. *Id.* 738 P.2d at 1230. "A court should be cautious in granting a motion for summary judgment when the resolution of the dispositive issue necessitates a determination of the state of mind of one or more of the parties." *Credit Union of America v. Myers*, 234 Kan. 773, 676 P.2d 99, 106 (1984). Intent to deceive is a state of mind and summary judgment is rarely appropriate where the factfinder must determine state of mind. *Id.*

## PROXIMATE CAUSE

 The bank first contends that any misstatements or omissions by the bank were not the proximate cause of the plaintiffs' damages. Rather, the bank contends Vernon Claiborne's ("Claiborne") misrepresentations of Trans–World's financial con-

dition through the use of fraudulent tax returns and financial statements induced the bank to enter into a banking relationship with Trans–World. Therefore, the bank alleges it did not have knowledge that the favorable representations it made to the plaintiffs were untrue. The bank further contends that Trans–World had money with which it could have paid the plaintiffs, but chose not to make payments for the shipments of metal. Thus, Vernon Claiborne's non-payment of the plaintiffs' bills was the cause of their loss.

Although the bank's proximate cause argument has no applicability to the plaintiffs' fraud claim, the court will consider the more pressing issue of whether the material facts are undisputed, and whether, applying the standards and guidelines above, summary judgment should be granted on the negligence and fraud claims.

The court finds there are genuine issues of material fact and summary judgment will be denied. The bank contends it relied upon the fraudulent representations of Vernon Claiborne that Trans–World was financially sound. On the other hand, it is undisputed that prior to the phone calls from the plaintiffs, the bank restructured all of Trans–World's outstanding loans and added collateral to all four loans, including Claiborne's home, the home in which his parents resided, and his wife's personal guaranty. No new credit was extended in exchange for the additional collateral, and there is a dispute as to whether Claiborne volunteered the collateral or whether the bank requested more collateral. Also prior to the phone calls and around the time the loans were restructured, it is undisputed that Trans–World had failed to make installment payments on some of the bank loans.

Further, the bank knew Trans–World had lost its only customer for a major product line, the HP500. The plaintiffs cite to a letter in which the bank set forth the terms Trans–World had to comply with or have the bank file the mortgage on Claiborne's Johnson County, Kansas, home. The bank stated that Trans–World must pay the $150,000 credit line in full, it must restore the inventory and accounts receivable to the level at the time the notes were made, the business must be showing a profit, and the working capital position must improve. The bank further stated they would not file the mortgage unless the business continued to deteriorate. The bank contends the letter referred only to the HP500 product line and not to Trans–World's business in general.

The court finds, when viewed in the light most favorable to the plaintiffs, the above facts create a dispute regarding the extent of the bank's knowledge. The court further finds, that to grant summary judgment for the bank, it would have to determine the reasonableness of Weatherbie's conduct and his state of mind in representing Trans–World's financial condition as positive. Because a factfinder could interpret the facts and come to different conclusions regarding the extent of the bank's knowledge, the reasonableness of Weatherbie's conduct and his state of mind, summary judgment is not appropriate and will be denied.

## CHARACTER OF THE STATEMENTS

The bank next contends that there was a factual basis for the statements and/or the comments made to the plaintiffs were simply opinions as to future events, and the bank cannot be liable. As set forth above by the court, Weatherbie, in the two telephone conversations, represented that Trans–World was credit-worthy, was a satisfactory customer, and had met its financial obligations to the bank.

Based upon the above discussion regarding the extent of the bank's knowledge of Trans–World's financial difficulties through the addition of collateral and the restructuring of loans, the court cannot find the statements made in the telephone conversations were true. A factfinder could reasonably infer the statements were, in fact, false and the bank had knowledge of the falsity.

The court further finds the statements were not merely opinions. Plaintiffs must prove the misrepresentations were of material facts. "A fact is

material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction involved." *Timi v. Prescott State Bank*, 220 Kan. 377, 553 P.2d 315, 325 (1976) (citation omitted). Further, the general rule is that whether a statement is one of opinion or material fact is a jury question, although if it is clearly an expression of opinion so that a party should not rely upon it as a statement of fact it may be decided as a matter of law. *Goff v. American Sav. Ass'n of Kansas*, 1 Kan.App.2d 75, 561 P.2d 897, 902 (1977).

The statements regarding the bank's credit experience with Trans–World were not opinions as to future events. The bank represented to the plaintiffs that Trans–World was credit-worthy, a satisfactory customer, and met its financial obligations to the bank. These are the kinds of statements to which reasonable companies considering doing business with a customer of the bank would attach importance. The court cannot find as a matter of law that the bank's statements were merely opinions.

### BANK'S DUTY

The bank next contends that it owed no duty to the plaintiffs, so it cannot be liable for any omission of facts during the two telephone conversations in question. The plaintiffs argue that this is not just an omissions case, but also one of affirmative misrepresentations. They further argue that, in fact, the bank did owe them a duty not to omit material facts regarding Trans–World's financial status.

The law in Kansas is clear that, when one undertakes to answer a financial inquiry regarding a third party and there is no fiduciary or contractual relationship between the party inquiring and the party being inquired of, the party is under a duty to answer truthfully. *DuShane v. Union Nat. Bank*, 223 Kan. 755, 576 P.2d 674, 679–80 (1978). Thus, the court finds that, having undertaken to provide the plaintiffs with information regarding Trans–World's financial status, the bank had a duty not to make any material misrepresentations.

Generally, however, unless the party concealing or suppressing material information has obtained an advantage, that party will not be liable for any damages resulting from the omissions. 576 P.2d at 679. The bank contends it has obtained no advantage and should not be liable for the plaintiffs' damages. It is uncontroverted that the bank had a security interest in all of Trans–World's inventory and accounts receivable. Although the bank apparently had not seized any of Trans–World's inventory, it is not an unreasonable conclusion that the bank's position may have improved with the additional inventory shipped by the plaintiffs. At the very least, this court finds the facts relating to whether the bank received an advantage by failing to disclose potentially material information are susceptible to more than one interpretation and summary judgment on this issue is inappropriate. As stated previously, the bank's knowledge and state of mind are fact questions best left to the factfinder.

### RELIANCE

The bank further contends that the plaintiffs could not, as a matter of law, reasonably rely on the statements made in short telephone conversations to decide to ship the goods to Trans–World. The bank alleges that if the plaintiffs could have ascertained the truth by the exercise of reasonable care, the bank is not liable. This, however, is not the law in Kansas.

If all of the elements of actual fraud are present, it is no defense that, with due diligence, a party might have discovered the falsity of the statements, but did not make any inquiry. *Wolf v. Brungardt*, 215 Kan. 272, 524 P.2d 726 (1974); *Fox v. Wilson*, 211 Kan. 563, 507 P.2d 252, 266 (1973), *Goff v. American Sav. Ass'n of Kansas*, 1 Kan.App.2d 75, 561 P.2d 897, 903 (1977). Rather, the test is whether the recipient of the information has knowledge that would alert a reasonable person to the potential falsity of the information. 561 P.2d at 903. Further, if the recipient of the information does not, in fact, believe it to

be true, there can be no reliance. *Slaymaker v. Westgate State Bank,* 241 Kan. 525, 739 P.2d 444, 453 (1987).[1]

In the present case, there have been no allegations the plaintiffs had any knowledge that would put them on notice of Trans–World's financial status. The knowledge of the bank's experience with Trans–World as a creditor was solely within the possession of the bank. This court will not decide as a matter of law that the plaintiffs unreasonably relied upon the representations made by the bank in the two phone calls in question. As stated earlier by the court, reasonableness of a party's action is more appropriately left to the factfinder.

## PUNITIVE DAMAGES

Finally, defendant bank contends it is entitled to summary judgment on the punitive damage claims by Metal Trading and Republic Alloys. It specifically contends that, in order to pursue a cause of action and recover punitive damages, the plaintiffs must allege actual fraud, malice, willful conduct, or wanton conduct under Kansas substantive law, K.S.A.1990 Supp. 60–3701.[2] The bank strenuously argues that "reckless disregard" is not an act that will subject the bank to punitive damages. The bank further alleges that K.S.A.1990 Supp. 60–3703 prohibits plaintiffs from asserting a claim for punitive damages without an order of the court allowing the claim based upon a determination that plaintiffs will likely prevail.

The Kansas statute in question reads in pertinent part: "In any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A.1990 Supp. 60–3702(c). Thus, to recover punitive damages, the plaintiff must plead and prove the conduct was willful, wanton, fraudulent, or malicious.

The defendant bank's motion for summary judgment on the punitive damages claim must fail for two reasons. First, the plaintiffs both alleged the requisite conduct in their complaint and not, as asserted by the bank, merely reckless disregard as a basis for their claims. Metal Trading and Republic Alloys' punitive damage claim alleged the described conduct in their respective complaints was "wanton, willful, malicious, and in complete disregard for the rights of others...." The requisite conduct is also sufficiently set forth in the pretrial order. The requisite conduct and allegations are also sufficiently set forth in the pretrial order. Second, the court has already found that the bank is not entitled to summary judgment on plaintiffs' claim for fraud. Therefore, should the plaintiffs prove their claim for fraud at trial, they could also prevail on their claims for punitive damages.

Although the bank further argued that the plaintiffs had not complied with K.S.A.1990 Supp. 60–3703 because they pled punitive damages in their original complaints without leave of the court after a hearing, the bank seems to abandon this argument in its reply memorandum. Nevertheless, this argument too must fail, this court having found that K.S.A.1990 Supp. 60–3703 is a procedural statute which conflicts with Rule 9(g) of the Federal Rules of Civil Procedure. *Nal. II, Ltd. v. Tonkin,* 705 F.Supp. 522, 526–29 (D.Kan. 1989). In *Nal. II,* this court ruled that Rule 9(g), which requires special damages to be pled in the complaint, would govern in a federal diversity case. Having found the Kansas statute to be purely procedural, the

---

**1.** The bank's reliance upon *Weigand v. Union Nat. Bank of Wichita,* 227 Kan. 747, 610 P.2d 572 (1980) for the proposition that, if the truth could be ascertained by ordinary care, reliance upon the representations is not justified, is misplaced. In that case, the individual to whom certain representations were made was a director of a corporation chargeable with the knowledge of the financial condition of the corporation.

**2.** Because of the effective dates of the respective statutes, K.S.A.1990 Supp. 60–3702 is the proper statute.

court must also determine whether the character or result of the case will be materially altered by failing to apply the state law. Following this court's previous analysis, failure to apply the Kansas statute would not result in an inequitable administration of the law in this case. In essence, by finding that the plaintiffs may maintain their causes of action for fraud, this court has herein determined that plaintiffs' claims for punitive damages are appropriate and justified. The only difference is that the determination was not made prior to allowing the plaintiffs to plead their claim for punitive damages. Thus, the court finds summary judgment will not be granted for the bank on plaintiffs' claims for punitive damages.

IT IS BY THE COURT THEREFORE ORDERED that the Miami County National Bank's motions for summary judgment against plaintiffs Metal Trading and Republic Alloys (Docs. 106 and 108) are denied.