# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2112

_____

C. Allen Villines; Robert Donnelly,    *
                                           *

              Appellants,        *

                                           *   Appeal from the United States

     v.                       *   District Court for the

                                         *   Western District of Missouri.

General Motors Corporation,       *

a Delaware Corporation,           *

                                         *

             Appellee.        *

_____

Submitted: January 13, 2003

Filed: April 2, 2003

_____

Before WOLLMAN and MURPHY, Circuit Judges, and GRITZNER,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

In this diversity action, C. Allen Villines and Robert Donnelly (collectively, Employees) allege contract and tort claims against their employer, General Motors Corporation (GM), based on alleged verbal representations regarding their right to

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

return to hourly employment after accepting salaried positions. Employees appeal the district court's[2] adverse grant of summary judgment. We affirm.

## I. Background

Employees began working for GM as hourly employees at GM's former assembly plant in the Fairfax District of Kansas City, Kansas. In the 1980s, GM constructed a new assembly plant in the Fairfax District and needed additional supervisors to staff both plants. Around 1986, Employees became "per diem" supervisors. As such, Employees were no longer part of the collective bargaining unit, but were still compensated on an hourly basis.

Around February 1987, Villines attended a meeting to discuss an opportunity for per diem supervisors to accept regular salaried positions. Jim Schmer, the plant's salaried personnel administrator, and Tim Danahy, the plant's personnel director, conducted the meeting. During this meeting, one of Villines' co-workers inquired as to what would happen if, after he accepted a salaried position, he found that he did not like the job. Schmer allegedly responded, "We understand that this job is not for everyone and if at any time you feel it's not for you and you need to go back, well, thank you for your time and your trouble and your effort." Villines and his co-workers were also advised that they would "retain all of [their] hourly rights as far as seniority."

In 1987, Donnelly was also offered a regular salaried position. Donnelly recalled that three members of GM management, including Schmer, advised him that those who accepted salaried positions would retain their seniority and would also have the right to return to hourly employment.

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Both Villines and Donnelly accepted GM's offer of regular salaried positions and executed employment agreements. In doing so, each "agree[d] to devote his time and service in the employ of the Employer in such capacity as the Employer may direct." The agreements also included the following clause:

The Employer and the Employe[e] acknowledge that there are no other arrangements, agreements, or understandings, verbal or in writing, regarding same and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialed by both the Employe[e] and the Employer.

At various times, GM increased Employees' pay and had them sign compensation statements. These statements, "[w]hen signed and accepted," became a part of Employees' "basic 'Employment Agreement.'" The statements also included the following language: "There are no other arrangements, agreements, understandings or statements[,] verbal or in writing, except as stated above."

On December 3, 1990, Danahy sent a letter to employees who had transferred from hourly to salaried employment prior to December 1, 1990. The letter offered these employees the option "to elect to have all future treatment as a salaried employee–in other words, eliminate the possibility of being returned to the hourly work force." Attached to the letter was an Agreement to Retain or Relinquish Hourly Recall Right on which employees could check one of two boxes. In April 1991, Donnelly executed the agreement and checked the box indicating that he elected "to relinquish [his] eligibility to return to the hourly work force and thereby have all future employment considerations based on policies, procedures and practices that pertain to salaried employees." Villines did not execute the agreement.

On December 14, 1995, a GM vice president issued a memorandum regarding "employee transfer activity from the salaried work force to the hourly workforce." The memorandum stated that employees who had transferred to salaried from hourly employment prior to December 1, 1990, and had elected to retain their eligibility to return to the hourly workforce "would remain salaried employees as before and retain eligibility to return to the hourly work force in the event they were facing unemployment due to a salaried reduction in force and had sufficient seniority to hold a position in the bargaining unit." The memorandum also provided that "[i]n circumstances not involving a reduction in the salaried work force, salaried employees may request return to the hourly work force," and that "[a]pproval of such request would be solely at management's discretion and in the best interest of the Corporation."

In 1999, Employees learned that, pursuant to a change in the collective bargaining agreement between GM and the union representing hourly employees, salaried employees who had transferred from hourly employment would no longer accrue hourly seniority, effective January 1, 2000. In October 1999, both Villines and Donnelly requested that they be returned to hourly employment. GM denied both requests.

Employees sued GM in the United States District Court for the Western District of Missouri, alleging six causes of action: breach of contract, promissory estoppel, fraud, fraud through silence, fraudulent promise of future events, and negligent misrepresentation. In count seven, Employees requested punitive damages. GM moved for summary judgment on all six substantive claims. Applying Kansas law, the district court granted GM's motion, and judgment was entered dismissing Employees' complaint.

## II. Standard of Review

"We review de novo a grant of summary judgment, applying the same standard as the district court." Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002) (citation omitted). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Thomas v. Union Pacific R.R. Co., 308 F.3d 891, 893 (8th Cir. 2002) (citation omitted). In this diversity case, we also review the district court's interpretation of state law de novo. Walk v. Starkey Mach., Inc., 180 F.3d 937, 939 (8th Cir. 1999) (citing Salve Regina Coll. v. Russell, 499 U.S. 225, 231(1991); Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir.1996)). "We may affirm the district court on any basis supported by the record." Thomas, 308 F.3d at 893 (citation omitted).

## III. Analysis

Employees' claims are based on the alleged verbal assurances by GM management regarding Employees' right to return to hourly employment after accepting supervisory positions. GM contends that its policies have never granted former hourly workers the unilateral right to transfer back to hourly positions. Instead, GM argues, transfer requests have always been subject to management approval, except in limited circumstances not found in this case. We agree with the parties that Kansas law governs Employees' claims, and we discuss each of these claims below.

### A. Breach of Contract

Employees contend that the alleged verbal assurances made by GM management were "essential provision[s] of the[ir] employment contract[s]" with GM, and that GM breached these provisions when it refused to allow them to return

to hourly employment. "Under Kansas law, parties to a contract may define the terms of their agreement and, absent fraud, mistake or duress, the contract is enforceable." Flight Concepts Ltd. P'ship v. Boeing Co., 38 F.3d 1152, 1157 (10th Cir. 1994) (citing Augusta Med. Complex, Inc. v. Blue Cross of Kansas, Inc., 608 P.2d 890, 895 (Kan. 1980)). "Where the parties have negotiated and entered into a written contract which addresses the issues negotiated between them, the written contract determines their rights." Id. (citing Albers v. Nelson, 809 P.2d 1194, 1197 (Kan. 1991); Edwards v. Phillips Petroleum Co., 360 P.2d 23, 26 (Kan. 1961)). Thus, "[w]hen a contract is complete, unambiguous, and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible." Simon v. Nat'l Farmers Org., Inc., 829 P.2d 884, 887-88 (Kan. 1992) (citing First Nat'l Bank of Hutchinson v. Kaiser, 564 P.2d 493 (Kan. 1977)); see also Jack Richards Aircraft Sales, Inc. v. Vaughn, 457 P.2d 691, 696 (Kan. 1969) ("Broadly stated, the parol evidence rule excludes evidence of prior or contemporaneous oral agreements to contradict or to modify a written contract.").

We see no ambiguity in the employment agreements. As discussed above, these agreements included a clause reserving GM's right to direct the "capacity" in which Employees would work. The alleged verbal representations contradict this clause and thereby "vary the terms" of the parties' agreements. Simon, 829 P.2d at 888. We are also satisfied that the agreements are "complete on [their] face." Robertson v. McCune, 472 P.2d 215, 218 (Kan. 1970); see Prophet v. Builders, Inc., 462 P.2d 122, 126 (Kan. 1969). The agreements included integration clauses disclaiming the existence of "[any] other arrangements, agreements, or understandings, verbal or in writing." Although Employees contend that they did not read these agreements, Kansas law provides that "a party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake." Albers, 809 P.2d at 1197 (citations omitted); see also Flight Concepts, 38

F.3d at 1157 ("A party cannot void a contract by claiming to be ignorant of its contents." (citing Albers, 809 P.2d at 1197)). Employees do allege fraud in their complaint. For the reasons discussed below, however, we are satisfied that Employees' fraud claims were properly dismissed. See infra Part III.B. Thus, because Employees have failed to demonstrate that GM breached a contractual term by refusing to permit them to return to hourly employment, summary judgment was properly granted with respect to their breach of contract claim.

## B. Fraud

Employees allege claims of fraud, fraudulent promise of future events, and fraud through silence. "Actionable fraud includes an untrue statement of material fact, known to be untrue by the person making it, made with the intent to deceive or recklessly made with disregard for its truthfulness, where another party justifiably relies upon the statement and acts to his injury." Slaymaker v. Westbank State Bank, 739 P.2d 444, 450 (Kan. 1987) (citations omitted). The misrepresentation "must relate to some material present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." Edwards, 360 P.2d at 26 (citations omitted). An exception exists where "there are circumstances tending to show an actual fraudulent intent at the time the promise or representation regarding a future event is made." Id.

As discussed above, the alleged verbal assurances regarding Employees' unilateral right to transfer to hourly status conflict directly with the clause in their employment agreements reserving GM's right to direct the "capacity" in which they would work. Under such circumstances, we fail to see how Employees' reliance on the assurances could be deemed justified. See Flight Concepts, 38 F.3d at 1157 ("Where the written contract directly contradicts the oral promises made during contract negotiations, the oral promise cannot be construed as fraudulent." (citing Edwards, 360 P.2d at 27; Jack Richards Aircraft Sales, Inc., 457 P.2d at 696)); see

-7-

also <u>Metal Trading Servs. of Colo., Inc. v. Trans-World Servs., Inc.</u>, 781 F. Supp. 1539, 1545 (D. Kan. 1991) (stating that the test for analyzing the reasonableness of a party's reliance on certain information is whether that party "has knowledge that would alert a reasonable person to the potential falsity of the information" (citing <u>Goff v. Am. Sav. Ass'n of Kansas</u>, 561 P.2d 897, 903 (Kan. Ct. App. 1977))). Although Employees contend that they did not read these agreements, this allegation does not save their claims of fraud. Under Kansas law, "[t]he fact that a party signs a contract and does not know its contents is not alone sufficient to permit that party to void it." <u>Albers</u>, 809 P.2d at 1198 (citation omitted). The Kansas Supreme Court has recognized that:

> Fraudulent representations as to the legal effect of an instrument will avoid it, even if made to one who has actually read it, if unable to judge of its true construction. But the fraud must be contemporaneous with the execution of the instrument and must consist in obtaining the assent of the party defrauded, by inducing a false impression as to its legal or literal nature and operation.

<u>Stegman v. Prof'l Bus. Men's Life Ins. Co.</u>, 252 P.2d 1074, 1080-81 (Kan. 1953) (quotation marks and citations omitted); <u>see</u> <u>Stapleton v. Mendoza</u>, 257 P.2d 113, 116 (Kan. 1953) ("If a person is ignorant of the contents of a written instrument and signs it under a mistaken belief, induced by misrepresentation, that it is an instrument of a different character, without negligence on his part, the agreement is void." (quotation marks and citations omitted)); <u>McKay v. Clark</u>, 178 P.2d 679, 684 (Kan. 1947) (noting that "in this case . . . the appellant does not plead that the written instruments should be set aside on the ground that he was induced to sign them by fraudulent representations as to their content"). Employees' claims, however, simply do not fall within this rule, as they have failed to direct us to any evidence indicating that the verbal assurances were "representations as to the legal effect of [the employment

agreements].” Stegman, 252 P.2d at 1081. We are therefore satisfied that, as a matter of law, Employees' reliance on the alleged verbal assurances was not justified.[3]

Employees' fraud through silence claim fails for a similar reason. This claim is based on GM's alleged failure to advise Employees “that its promise to allow [their] unconditional return to the Bargaining Unit [i.e., hourly employment] in the event they accepted supervisory positions could be unilaterally revoked.” To establish fraud through silence under Kansas law, a plaintiff must show, inter alia, “that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence.” OMI Holdings, Inc. v. Howell, 918 P.2d 1274, 1299 (Kan. 1996) (quotation marks and citations omitted). We need not look beyond this first element, as the evidence demonstrates that Employees were provided written notice, via the employment agreements, that GM retained the right to direct the “capacity” in which they would work. We are therefore satisfied that Employees had knowledge of the facts underlying their fraud through silence claim. Accordingly, summary judgment was properly granted with respect to all three of Employees' fraud claims.

## C. Promissory Estoppel

Employees also seek to recover under a theory of promissory estoppel. The Kansas Supreme Court has explained that:

---

[3]As discussed above, in 1991 Donnelly elected “to relinquish [his] eligibility to return to the hourly work force and thereby have all future employment considerations based on policies, procedures and practices that pertain to salaried employees” when he executed the Agreement to Retain or Relinquish Hourly Recall Right. This document further undermines Donnelly's assertion that his reliance on the alleged verbal representations was justified.

> [I]n order for the doctrine of promissory estoppel to be invoked the evidence must show that the promise was made under circumstances where the promisor intended and reasonably expected that the promise would be relied upon by the promise[e] and further that the promisee acted reasonably in relying upon the promise.

Kirkpatrick v. Seneca Nat'l Bank, 515 P.2d 781, 787 (Kan. 1973) (quotation marks and citation omitted). We question whether the doctrine applies in the circumstances of this case. See, e.g., Decatur County Feed Yard, Inc. v. Fahey, 974 P.2d 569, 577-78 (Kan. 1999). Assuming that it does, we again conclude that, as a matter of law, Employees' reliance on the alleged assurances was not justified. See supra Part III.B. Thus, summary judgment was properly granted with respect to Employees' promissory estoppel claim.

## D. Negligent Misrepresentation

Under Kansas law, "[t]he elements of negligent misrepresentation differ from those of fraudulent misrepresentation in one major respect: while the latter requires proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false, the former merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information." Mahler v. Keenan Real Estate, Inc., 876 P.2d 609, 616 (Kan. 1994) (quoting Huttegger v. Davis, 599 S.W.2d 506, 514 (Mo. 1980) (Welliver, J., dissenting)). Thus, negligent misrepresentation, like fraud, includes an element of justifiable reliance. See id.; Slaymaker, 739 P.2d at 450. Because Employees failed to demonstrate a genuine factual issue as to this element, see supra Part III.B, their negligent misrepresentation claim was also properly dismissed.

The judgment is affirmed.

A true copy.

Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.