United States Court of Appeals,

Fifth Circuit.

No. 94-10809.

Michael ELLIOTT and Vivian Elliott, Plaintiffs-Appellees,

v.

Robert TILTON, etc., Marte Tilton, etc., Word of Faith World Outreach Center, Inc., and Word of Faith World Outreach Center Church, etc., Defendants-Appellants.

Aug. 31, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM, and PARKER, Circuit Judges, and McBRYDE[*], District Judge.

ROBERT M. PARKER, Circuit Judge:

The plaintiffs brought this action in federal district court, under its diversity jurisdiction, claiming damages for fraud, breach of contract, intentional infliction of emotional distress, and conspiracy. The plaintiffs were awarded 1.5 million in damages after a jury trial, and the defendants appealed. For the first time on appeal, one defendant, Marte Tilton, contended that the district court lacked subject matter jurisdiction to entertain the plaintiffs' claims. The other defendants adopted this argument. Since we find that the plaintiffs did not meet their burden of establishing complete diversity, the only basis for federal jurisdiction, we vacate the judgment of the district court and order the plaintiffs' claims dismissed.

---

[*]District Judge of the Northern District of Texas, sitting by designation.

1

## I. FACTS

The defendants, Robert and Marte Tilton, are co-founders of the Word of Faith World Outreach Center, which, among other things, serves as the organization behind Robert Tilton's television ministry. Prior to March 1992, Word of Faith operated as a Texas non-profit corporation. In order to avoid disclosure of its membership list to the Texas Attorney General, on March 30, 1992, the non-profit corporation, Word of Faith World Outreach Center, Inc., was dissolved. The Tiltons continued their ministry through Word of Faith World Outreach Center Church, an unincorporated religious association.

The plaintiffs, Mike and Vivian Elliott, live in Florida. Vivian Elliott has suffered periodically from depression as a result of alleged childhood abuse. In 1990, Mrs. Elliott attended a cook-out at her parents' home, after which she went home and wrote a "good-bye" note to her husband and children, and drove to a wooded area where she contemplated taking her own life. While sitting in her car talking to God about her family problems, Mrs. Elliott felt that God responded and told her to go home to her husband and children. The next morning as she was watching television, Mrs. Elliott saw Robert Tilton on his Success N'Life program. During this program, Mr. Tilton said that someone who was watching was depressed and instructed this unidentified person to call the Word of Faith prayer line. Mrs. Elliott felt as though Robert Tilton was speaking directly to her, and that God had sent him to reinforce God's message of the night before.

Mrs. Elliott did call Tilton's prayer line. In addition to making a monetary vow, Mrs. Elliott was eventually persuaded to make a video testimonial for use on Robert Tilton's television program. Although Tilton's representatives later denied any such representation, Mrs. Elliott testified that she was told that any money generated by the use of her testimonial would be used to set up a crisis center to help people who had suffered the same kind of abuse she had. In addition, prior to filming, the Elliott's were told that Word of Faith would stop showing the testimonial anytime they asked. When Mrs. Elliott finally saw the edited testimonial she became very upset because of certain dramatic recreations meant to depict the type of abuse she suffered as a child. Despite her calls and letters to Word of Faith asking that the testimonial not be shown, Mrs. Elliott received no timely response, and Word of Faith continued to use the testimonial.

The Elliotts filed this action in federal district court on November 13, 1993, seeking damages for fraud, breach of contract, intentional infliction of emotional distress, and conspiracy. The case was tried before a jury, and on April 21, 1994, the jury returned a verdict in favor of the plaintiffs on all claims in a total amount of 1.5 million dollars. The district court subsequently granted defendants' motion for judgment as a matter of law with regard to plaintiffs' breach of contract claim, but allowed the remainder of the verdict to stand. Final judgment was entered on July 29, 1994. The defendants timely filed this appeal.

## II. FEDERAL JURISDICTION

On appeal, defendant-appellant Marte Tilton contends that the district court did not have subject matter jurisdiction because the plaintiffs failed to establish complete diversity.[1]  Although this argument was not presented in the district court, "[t]he right to challenge [subject matter] jurisdiction cannot be waived."[2]

> Federal courts are not courts of general jurisdiction;  they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.  For that reason, every federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,"....[3]

In addition, it is presumed that a cause lies outside the limited jurisdiction authorized by Constitution and statute, "and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]"[4]  When we find that the lower federal court lacked jurisdiction, "we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit."[5]

---

[1] The other appellants adopted this argument in their reply brief to this Court.

[2] *Taylor-Callahan-Coleman Counties District Adult Probation Department v. Dole,* 948 F.2d 953, 956 (5th Cir.1991).

[3] *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (citations omitted).

[4] *Kokkonen v. Guardian Life Ins. Co. of America,* --- U.S. ---, ----, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) (citations omitted);  *see also Stafford v. Mobil Oil Corp.,* 945 F.2d 803, 804 (5th Cir.1991) ("The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction.").

[5] *Bender,* 475 U.S. at 541, 106 S.Ct. at 1331 (quoting *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 831, 80 L.Ed.

The plaintiffs, the Elliotts, stated in their complaint that federal jurisdiction was based on diversity of citizenship.[6] The plaintiffs alleged that they were residents and citizens of the State of Florida, that the defendants Robert and Marte Tilton were citizens of the State of Texas, and that Word of Faith World Outreach Center Church was an unincorporated religious association, and the successor to Word of Faith World Outreach Center, Inc., with its principal place of business located within the state of Texas.[7]

The record clearly establishes diversity between the plaintiffs and the defendants Robert and Marte Tilton. However, "[i]n order for a federal court to assert diversity jurisdiction, diversity must be complete; the citizenship of all of the plaintiffs must be different from the citizenship of all of the defendants."[8] Thus, we must be concerned also with the citizenship of defendant Word of Faith World Outreach Center Church.

Rule 8(a)(1) of the Federal Rules of Civil Procedure requires

---

1263 (1936)).

[6] 28 U.S.C. § 1332(a)(1) provides that the district courts shall have original jurisdiction of civil actions between citizens of different states.

[7] The plaintiffs also named as a defendant Word of Faith World Outreach Center, Inc., a Texas non-profit corporation, but acknowledged that at the time of the filing of the complaint it had been dissolved. Since diversity of citizenship is determined at the time the action is filed, *Freeport-McMoran, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991), Word of Faith's previous corporate status is irrelevant to our determination.

[8] *Stafford,* 945 F.2d at 804.

a pleading which sets forth a claim to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends...."[9]  Even though this rule does not require citation of a particular statute by name,[10] it is generally agreed that "[w]hen jurisdiction depends on citizenship, citizenship should be "distinctly and affirmatively alleged.' "[11]  This burden rests with the plaintiff as the party invoking the court's jurisdiction,[12] and "[f]ailure adequately to allege the basis for diversity jurisdiction mandates dismissal."[13]  Plaintiffs contend that their allegations of diversity are sufficient.  We disagree.

We start with the well-settled principle that an unincorporated association, religious or otherwise, must be considered a citizen of every state in which its members reside.[14]

---

[9]FED.R.CIV.P. 8(a)(1).

[10]*Illinois Central Gulf Railroad Co. v. Pargas, Inc.,* 706 F.2d 633, 636 (5th Cir.1983).

[11]*Stafford,* 945 F.2d at 804 (quoting *McGovern v. American Airlines, Inc.,* 511 F.2d 653, 654 (5th Cir.1975) (quoting 2A Moore's Federal Practice 8.10 at 1662));  *Illinois Central Railroad v. Pargas, Inc.,* 706 F.2d at 636 & n. 2;  *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 316 (5th Cir.1980).

[12]*Harvey Constr. Co. v. Robertson-Ceco Corp.,* 10 F.3d 300, 303 (5th Cir.1994) (citing *Green v. Hale,* 433 F.2d 324, 329 (5th Cir.1970)).  The plaintiffs argue "The Defendant herein has failed to direct this Court to anything within the lower court record on appeal which would show a lack of jurisdiction in this matter...."  The plaintiffs' attempt to shift the jurisdictional burden in this case is unsupported and unpersuasive.

[13]*Stafford,* 945 F.2d at 804-05 (citing *Patterson v. Patterson,* 808 F.2d 357, 357 (5th Cir.1986);  *McGovern,* 511 F.2d at 654).

[14]*United Steelworkers of America v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965);  *Hummel v.*

As a widespread and diffuse television ministry, or "church", Word of Faith World Outreach Center must be considered an unincorporated association for purposes of diversity, as plaintiffs alleged. Although apparently realizing that Word of Faith fell into this category, the Plaintiffs only alleged that its principal place of business was in the State of Texas. This allegation would have been relevant to the determination of the citizenship of a corporate entity, but is completely irrelevant with regard to the citizenship of an unincorporated association, such as Word of Faith.

The plaintiffs also presented a stipulation, by way of a joint pre-trial order, that Word of Faith was "an unincorporated religious association *located in* Farmers Branch, Texas." This stipulation must also be deemed insufficient because it does not address the citizenship of the defendant association and "can be construed as being purely "location descriptive' in the geographic sense."[15] The basis of our jurisdiction "cannot "be established

_____

*Townsend,* 883 F.2d 367, 369 (5th Cir.1989); *see also C.T. Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (holding that citizenship of a limited partnership for diversity purposes depends on the citizenship of "all the members," including limited partners).

[15]*Muscle Shoals Assoc., Ltd. v. MHF Ins. Agency, Inc.,* 792 F.Supp. 1224, 1227 (N.D.Ala.1992) (holding that allegation that defendant was a "Florida Corporation" was not sufficient allegation of state of incorporation); *see also Nadler v. American Motors Sales Corp.,* 764 F.2d 409, 413 (5th Cir.1985) (holding that allegation that parties were "residents" of particular states does not satisfy the requirement of Rule 8(a)(1) where diverse "citizenship" was required for jurisdiction); *Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir.1984) (same); *Kerney v. Fort Griffin Fandangle Ass'n, Inc.,* 624 F.2d 717 (5th Cir.1980) (same).

7

argumentatively or by mere inference.' "[16] Such a stipulation could refer merely to the location of the church's headquarters or facilities and thus cannot serve to establish citizenship for purposes of jurisdiction.

To distinctly and affirmatively allege Word of Faith's citizenship, plaintiffs should have included in their complaint allegations regarding the specific states in which Word of Faith's members resided. Such specific allegations are necessary to allow a court to determine whether complete diversity of citizenship exists. The plaintiffs' complaint contained no such allegations,[17] and plaintiffs point to no evidence in the record that would allow them to establish the necessary jurisdictional facts.

The defendants adopt an expansive view of the "membership" of Word of Faith. In essence, the defendants seem to take the position that the church's membership consists of everyone the church wishes to so designate, including contributors to their television ministry and people who merely listen to their broadcasts. While the defendants' position in this regard raises some interesting questions, it is not necessary for us to resolve or even reach them. On the record before us, we must hold that plaintiffs failed to meet their burden of alleging and establishing

---

[16]*Illinois Central Gulf Railroad Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir.1983) (citing 5 C. Wright & A. Miller *Federal Practice and Procedure* § 1206, at 78-79 (1969 & Supp.1983)).

[17]We note that plaintiffs have not moved to amend their "[d]efective allegations of jurisdiction" as they could have even on appeal pursuant to 28 U.S.C. § 1653.

complete diversity.

## III. CONCLUSION

We are troubled by the obvious waste of resources that results from dismissing the case at this juncture for want of jurisdiction. However, because plaintiffs failed to plead or prove the complete diversity on which they claimed to base jurisdiction, we have no alternative. This type of jurisdictional defect ordinarily should be discovered at an early management or status conference prior to a substantial investment in case preparation. Unfortunately, it was not caught when it should have been in this case. The time required to establish the legal and factual basis for federal jurisdiction is a worthwhile investment. More importantly, failing to do so, as in this case, is costly. For the foregoing reasons, the judgment of the district court must be VACATED for lack of jurisdiction, and the plaintiffs' claims are DISMISSED without prejudice.