89 F.3d 260
 Michael ELLIOTT and Vivian Elliott, Plaintiffs-Appellees,
v.
Robert TILTON, etc., Marte Tilton, etc., Word of Faith World
Outreach Center, Inc., and Word of Faith World
Outreach Center Church, etc.,
Defendants-Appellants.
 No. 94-10809.
 United States Court of Appeals,
Fifth Circuit.
 July 26, 1996.
 
 Gary L. Richardson, Dallas, TX, Dana C. Bowen, Wasoner, OK, for plaintiffs-appellees.
 Robert B. Wellenberger, Dallas, TX, Rhonda Johnson Byrd, Thompson, Coe, Cousins & Irons, Dallas, TX, for Robert Tilton.
 Kari S. McKee, Sidney G. Dunagan, Gable & Gotwals, Tulsa, OK, for Marte Tilton.
 Appeal from the United States District Court for the Northern District of Texas.
 Before HIGGINBOTHAM and PARKER, Circuit Judges, and McBRYDE*, District Judge.
 ROBERT M. PARKER, Circuit Judge:
 
 
 1
 The plaintiffs brought this diversity action in federal district court, asserting claims for fraud, breach of contract, intentional infliction of emotional distress, and conspiracy. A jury awarded the plaintiffs compensatory and punitive damages on all of their claims. After the verdict, the district court granted judgment as a matter of law in favor of the defendants on the breach of contract claim, but entered judgment in favor of the plaintiffs on the remaining claims. The defendants timely appealed.
 
 
 2
 Because plaintiffs had not adequately pled and proven the citizenship of the church, this Court held, initially, that the plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.[1] However, before this Court's mandate had issued, plaintiffs moved to dismiss the church as a nondiverse party in order to achieve complete diversity after judgment. Plaintiffs asked us to consider this motion a petition for rehearing. Granting this request, we granted the petition for rehearing and withdrew our earlier opinion.[2] We recognized that under Newman-Green, Inc. v. Alfonzo-Larrain,[3] this Court had the authority to dismiss dispensable nondiverse parties. However, because the district court was in a better position to determine whether dismissal of the nondiverse party would prejudice any of the other parties to the litigation, we entered an opinion remanding the case to the district court for proceedings on the motion to dismiss.[4]
 
 
 3
 Again, before this Court's mandate had issued, we were asked to consider a Joint Petition for Panel Rehearing and Supporting Stipulations. In order to avoid the expense and delay of a remand and subsequent appeal, the parties stipulated that Word of Faith World Outreach Center Church, as well as its predecessor, Word of Faith World Outreach Center, Inc., should be dismissed. The parties moved jointly that the judgment of the district court with regard to these defendants be vacated. This motion was granted. With complete diversity thus achieved, this Court again granted rehearing to consider, on the merits, the appeals of the individual defendants. Now, having reached the merits, we find that the jury verdicts against these individual defendants cannot stand. Therefore, we reverse the judgment of the district court and render judgment in favor of Robert and Marte Tilton.
 
 I. FACTS
 
 4
 Robert and Marte Tilton are co-founders of Word of Faith World Outreach Center. Word of Faith operated as a Texas non-profit corporation until its dissolution on March 30, 1992. The assets and records of Word of Faith, Inc. were transferred to Word of Faith World Outreach Center Church, an unincorporated religious association. Robert Tilton is the pastor of Word of Faith. Marte Tilton was the general manager of administration operations until July 1993 when Robert Tilton relieved her of that responsibility.
 
 
 5
 Plaintiff Vivian Elliott suffered from periodic bouts of depression as a result of sexual abuse she suffered as a child. In late 1990, Mrs. Elliott attended a cook-out at her parents home where conflicts arose with her father and her brother. Upset, Mrs. Elliott wrote a "good-bye" note to her family and drove to a wooded area. Mrs. Elliott was contemplating suicide when she felt that God responded to her and told her to go home to her husband and children. She did so and soon after saw Robert Tilton on his Success N'Life television program. Mrs. Elliott felt as though Robert Tilton was speaking directly to her, and believed that God had sent Tilton to reinforce his message. Mrs. Elliott called the Word of Faith prayer line and made a monetary vow.
 
 
 6
 A few weeks later, Mrs. Elliott wrote a letter to Robert Tilton, explaining her experience. After the letter was screened for contributions and scanned for content it was directed to the church research department where Word of Faith employee Grace Rand read the letter. Ms. Rand called Vivian Elliott to gather more information to determine whether Mrs. Elliott's experience would make a good testimonial for Robert Tilton's television programs.
 
 
 7
 Subsequently, Word of Faith employee Paul Pettite called Mrs. Elliott to ask if she would be interested in doing a testimonial for Robert Tilton Ministries. According to Mrs. Elliott, Pettite told her the money generated by her testimonial would be used to start a crisis center to help people who had suffered childhood abuse. Pettite also told the Elliotts that Word of Faith would stop airing the testimonial any time they asked. Ultimately, the Elliotts agreed to allow the production of a testimonial based on Mrs. Elliott's experience.
 
 
 8
 In early 1991, Pettite and other Word of Faith employees met with the Elliotts to film the testimonial. Filming consisted of interviews with both plaintiffs and shots of the Elliotts walking hand-in-hand, kissing, and watching a Robert Tilton television program. Mrs. Elliott provided a note like the one she had left for her family and photographs of herself at different ages. The final edited version of the testimonial was approximately five minutes long and consisted of interviews of the Elliotts, and cover shots of the Elliotts praying, watching Mr. Tilton on television, and walking outside. The testimonial also contained a scene filmed in a wooded area in which an older man is seen moving toward a young girl in a pick-up truck while a narrator describes how Vivian Elliott was abused by her father as a young girl.
 
 
 9
 Mrs. Elliott received a copy of the final version of the testimonial approximately six weeks after the filming. However, because the Elliott's VCR was broken, she did not actually watch the video for more than a month. When Mrs. Elliott did finally watch the edited testimonial she became upset at its content. Mrs. Elliott called the Word of Faith prayer line, on two occasions, to tell Mr. Pettite that she did not want Word of Faith to broadcast the testimonial. On both occasions, Mr. Pettite was not available, but Mrs. Elliott explained to the operator that she did not want the testimonial aired. No one from Word of Faith returned her calls.
 
 
 10
 Finally, Mrs. Elliott decided to write a letter to Robert Tilton advising him that she wanted him to stop using her testimonial. Receiving no response to this letter, Mrs. Elliott sent a second letter to Robert Tilton. To this letter the Elliotts received a form letter that did not address Mrs. Elliott's request. Subsequently, Mrs. Elliott received a letter from Word of Faith employee Bonnie Cox that did address her request. Ms. Cox testified that the Elliott testimonial was aired inadvertently on one occasion after she received Mrs. Elliott's letter.
 
 
 11
 In November 1993, the Elliotts brought the underlying action against Robert and Marte Tilton, the corporate church, and Word of Faith World Outreach Center Church as its successor. The plaintiffs also named three other individual defendants who were voluntarily dismissed from the suit prior to trial. The plaintiffs sought damages for breach of contract, intentional infliction of emotional distress, fraud, and conspiracy. A jury found in favor of the plaintiffs. Before and after the verdict, defendants moved for judgment as a matter of law on each of the plaintiffs' claims. After the verdict, the district court granted the defendants' motion for judgment as a matter of law as to the claim for breach of contract. However, the district court entered judgment in favor of the plaintiffs on the remaining claims, and the defendants filed this appeal. The plaintiffs did not cross-appeal the district court's judgment on their breach of contract claim.
 
 II. DISCUSSION
 
 12
 As mentioned above, the judgments as to Word of Faith have been vacated, and the plaintiffs' claims against the church were dismissed for the purpose of establishing complete diversity after the judgment. Thus, the only issues left for resolution on this appeal involve the verdicts against Robert and Marte Tilton for fraud, intentional infliction of emotional distress, and civil conspiracy. It is those issues we now address.[5]
 
 A. FRAUD
 
 13
 Both Robert and Marte Tilton contend that there is no substantial evidence to support the jury's finding that they committed fraud. To recover for fraud, plaintiffs had to establish (1) a material misrepresentation, (2) that the representation was false, (3) that when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion, (4) that the speaker made the representation with the intent that it should be acted upon by the plaintiffs, and (5) that the plaintiffs suffered injury thereby. Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 723 (Tex.1990).
 
 
 14
 Specifically, the Tiltons contend that there is no evidence that either of them made any representation to the plaintiffs. Indeed, all of the misrepresentations to which plaintiffs point allegedly were made by Paul Pettite and Grace Rand who were employees of Word of Faith World Outreach Center, Inc. at the time. In general, "[a] person cannot be held liable for a fraudulent representation unless he made it himself or authorized another to make it for him or in some way participated therein...." First Dallas Petroleum, Inc. v. Hawkins, 727 S.W.2d 640, 648 (Tex.App.--Dallas 1987, no writ) (quoting Ross v. Seip, 154 S.W.2d 958, 961 (Tex.Civ.App.--Texarkana 1941, writ ref'd w.o.m.)). It is also true, however, that under Texas law, an employee's fraudulent representation, or other intentional tort, is imputed to his or her employer under the doctrine of respondeat superior when it is committed in the scope of employment. Williams v. United States, 71 F.3d 502, 506 (5th Cir.1995) (citing Houston Transit Co. v. Felder, 208 S.W.2d 880, 881 (Tex.1948)). Since the church is no longer a party, we may assume, without finding, that liability for misrepresentations made by Paul Pettite or Grace Rand would be imputed to Word of Faith as their employer. However, plaintiffs point to no evidence, and there appears to be none, that either Robert or Marte Tilton individually authorized or participated in any of the alleged misrepresentations.[6]
 
 
 15
 Plaintiffs seem to acknowledge this lack of evidence. Indeed, plaintiffs appear to argue that they need not show that any misrepresentations were made or authorized by Robert or Marte Tilton because there is sufficient proof of constructive fraud to allow them to pierce the corporate veil, and thereby impose liability on these individual defendants for the actions of corporate agents; but, plaintiffs make this argument for the first time on appeal.[7] Plaintiffs' theories regarding piercing the corporate veil were not included in the pleadings or the jury instructions in the district court. Because these theories were not properly presented below, we will not consider them on appeal. Randolph v. Resolution Trust Corp., 995 F.2d 611, 620 n. 9 (5th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994); Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir.1983).
 
 
 16
 B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
 
 
 17
 Robert and Marte Tilton also contend that there is insufficient evidence to support the jury's verdict on the plaintiffs' claim of intentional infliction of emotional distress. To establish this claim, plaintiffs had to present evidence that (1) the defendants acted intentionally or recklessly, (2) the defendants' conduct was extreme and outrageous, (3) the defendants' actions caused the plaintiffs to suffer emotional distress, and (4) the emotional distress suffered by the plaintiffs was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex.1993).
 
 
 18
 As with plaintiffs' claim for fraud, plaintiffs are unable to point to any evidence of extreme or outrageous conduct by Robert or Marte Tilton individually. Likewise, we need not determine whether actions by other agents of Word of Faith were extreme or outrageous because plaintiffs have established no basis for imputing those actions to the Tiltons.
 
 C. CIVIL CONSPIRACY
 
 19
 Robert and Marte Tilton also challenge the judgment in favor of plaintiffs on their claim of civil conspiracy. "An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Massey v. Armco Steel, 652 S.W.2d 932, 934 (Tex.1983). To establish a civil conspiracy, a plaintiff must be able to show, inter alia, a meeting of the minds of two or more persons on the object or course of action. Id. However, the acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself. Fojtik v. First National Bank, 752 S.W.2d 669, 673 (Tex.App.--Corpus Christi 1988, writ denied). "As a matter of law, a corporation or other company cannot conspire with itself, no matter how many of its agents participate in the complained of action." Wilhite v. H.E. Butt Co., 812 S.W.2d 1, 5 (Tex.App.--Corpus Christi 1991, no writ).
 
 
 20
 The only people alleged by plaintiffs to have participated in the conspiracy were Robert Tilton, Marte Tilton, and J.C. Joyce, the attorney for Word of Faith. Thus, all three alleged co-conspirators were agents of Word of Faith. Plaintiffs contend that the rule of Fojtik and Wilhite should not apply because the co-conspirators were acting for their own personal financial gain rather than for the benefit of the corporation. However, plaintiffs can point to absolutely no evidence in support of that contention. Defendants correctly contend that they were entitled to judgment as a matter of law on plaintiffs' claim of civil conspiracy.
 
 III. CONCLUSION
 
 21
 For the reasons given above, the judgment of the district court as to defendants Robert and Marte Tilton is REVERSED.
 
 
 
 *
 District Judge of the Northern District of Texas, sitting by designation
 
 
 [1]
 Elliott v. Tilton, 62 F.3d 725 (5th Cir.1995)
 
 
 [2]
 Elliott v. Tilton, 69 F.3d 35 (5th Cir.1995)
 
 
 [3]
 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989)
 
 
 [4]
 Elliott v. Tilton, 69 F.3d 35 (5th Cir.1995)
 
 
 [5]
 In the district court, Texas law was applied in this diversity action. Since neither party contends that this was an incorrect choice of law, we too will apply Texas law in evaluating the evidence in support of the verdicts
 
 
 [6]
 Plaintiffs do claim, without benefit of explication or record cite, that there was evidence that "Robert Tilton personally uttered misrepresentations to the Elliotts during his Success N'Life programs." This kind of conclusory contention does not constitute proper argument, much less evidence sufficient to uphold a jury verdict
 
 
 [7]
 Plaintiffs rely primarily on a "sham to perpetrate a fraud" theory in support of their contention that the corporate fiction should be avoided. Although plaintiffs also mention the "alter ego" theory in support of their contention, they concede that "the extent to which the corporate formalities were observed at Word of Faith, Inc. was not established at trial...."