NOT DESIGNATED FOR PUBLICATION

No. 124,605

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NVLCC, LLC,
*Appellant*,

v.

NV Lenexa Land Holdings, LLC,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed November 10, 2022.
Affirmed.

*Justin T. Balbierz* and *Mark J. Lazzo*, of Mark J. Lazzo, P.A., of Wichita, for appellant.

*Robert S. Caldwell*, of Caldwell & Moll, L.C., of Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and HURST, JJ.

PER CURIAM: NVLCC, LLC appeals from the district court's ruling that it did not prove the essential elements of civil conspiracy against NV Lenexa Land Holdings, LLC. Although the parties asserted various claims against one another before the district court, the only issue presented on appeal is whether the district court erred in denying NVLCC, LLC's conspiracy claim after hearing the evidence presented at a two-day bench trial. Based on our review of the record on appeal in light of Kansas law, we conclude that the district court did not err in finding that NVLCC, LLC failed to prove one or more requisite elements of its civil conspiracy claim. Thus, we affirm.

1

FACTS

At the outset, we note that most of the material facts in this case have been stipulated to by the parties. In particular, the parties stipulated to the factual findings made by an arbitrator in a collateral arbitration proceeding. Moreover, the facts material to the resolution of this appeal were set forth in a 22-page journal entry issued by the district court. Accordingly, we will summarize the facts in this section and will address additional facts as necessary in the analysis section of our opinion.

The appellant, NVLCC, LLC, is a Kansas limited liability company. Steve and Julia Sobek—who are not parties to this appeal—own all the membership interests in the company. The appellee, NV Lenexa Land, LLC, is also a Kansas limited liability company with several members. Considering the similarities in the names of these limited liability companies—as well as the fact that several other limited liability companies were involved in the underlying real estate transaction—we will refer to the parties to this appeal as the appellant and the appellee throughout the remainder of this opinion.

In 2015, Sobek located a 3 1/2-acre tract of land near the Lenexa City Center that he believed would be "ripe for residential development." Searching for potential partners to help purchase and develop the real property, Sobek contacted Zach Henderson and his wife, Jessica Spalding. Both indicated an interest in developing the property and recommended bringing a couple with whom they had previously worked—Neil Robinson and his wife, Elisabeth Embry—into the deal.

The three couples subsequently formed Parthenon Investing, LLC (Parthenon). However, the couples did not hold membership interests in Parthenon in their own names. Instead, each couple formed separate limited liability companies to hold one-third membership interests in Parthenon. Under the terms of an operating agreement entered

2

into by the members, Henderson and Sobek were to serve as the initial co-managers of Parthenon.

Pursuant to the operating agreement, the co-managers were granted "full and exclusive right, power, and authority to manage the affairs of the Company and make all decisions with respect thereto." In addition, the agreement provided that the "right, power, and authority of the [co-managers] pursuant to this Agreement shall be liberally construed to encompass all acts and activities in which a limited liability company may engage under the Kansas Act."

Complicating matters further, the three couples also used their separate limited liability companies to form North Village Fund, LLC (North Village Fund) as a vehicle to hold title to the real property during development and construction of the project. It is undisputed that the parties intended that Parthenon serve as the manager of North Village Fund and that any profits were to be divided evenly between Parthenon's members. Each member of North Village Fund made initial investments of approximately $3,333. There is no evidence in the record to suggest that any additional contributions were made by the members of North Village Fund.

In September 2015, North Village Fund purchased the real property in Lenexa for $850,000. Approximately half of the funds used to purchase the land was obtained from various investors, and North Village Fund borrowed the remaining $425,000 from CoreFirst Bank. The loan was secured by a first mortgage on the real property. In addition, the loan was personally guaranteed by the Sobeks, Henderson, Spalding, Robinson, and Embry.

Over the course of the next year, the proposed development of the real property stalled, and the relationship between the various stakeholders began to deteriorate. Significantly, a dispute arose between Sobek and Henderson as to what company to use

3

to obtain needed funding and financing. As a result, Henderson scheduled a special meeting of the members of Parthenon held on September 19, 2016, at which North Village Fund's purchase of the real property was ratified. In addition, Sobek was removed as Parthenon's co-manager, and Robinson was appointed to serve as co-manager in his place.

On October 5, 2016, Henderson and Spalding created Elux Homes, LLC (Elux Homes). Spalding was the sole member and manager of the new limited liability company. According to a press release, Elux Homes planned to build a single-family smart home community at Lenexa City Center. However, Sagebrush Companies, Inc. (Sagebrush) acquired the promissory note and mortgage on the real property from CoreFirst Bank a few months later and commenced a foreclosure action in district court.

North Village Fund then entered into an agreement to sell the real property to Plutus Development, Inc. (Plutus Development) for $1.3 million. However, this sale was never completed. Shortly thereafter, on March 8, 2017, Henderson created another limited liability company—the appellee in this case—in which Elux Homes was the sole member and manager. Less than a week later, Plutus Development assigned its rights under the real estate sale agreement to the appellee. Henderson executed the assignment both in his capacity as chief executive officer of Plutus Development and as manager of the appellee.

The next day, North Village Fund transferred its sole asset—the real property in Lenexa—to the appellee for $1.3 million. We pause to note that the parties to this appeal have agreed that $1.3 million was the approximate value of the real property at the time of transfer. To pay the outstanding balance on the promissory note and mortgage against the real property, the appellee obtained a $470,000 loan from Richmond Morgan, LLC. The loan documents were executed by Henderson in his capacity as manager of the appellee and in his capacity as manager of North Village Fund.

4

Additionally, the appellee delivered an unsecured $850,000 promissory note to North Village Fund. The note was signed by Henderson in his capacity as the appellee's manager. Furthermore, the terms of the promissory note were set by Henderson acting concurrently in his capacity as manager of North Village Fund and manager of the appellee. According to Henderson, he entered into these transactions to avoid having the real property go through foreclosure.

On July 1, 2017, Andy Talbert—a real estate professional involved in capital formation—was named as the appellee's manager. Talbert began working on obtaining investors for the development of the property. His attempts were successful and eventually the appellee began the process of developing the real property.

After learning that North Village Fund had sold the real property to the appellee, the appellant instituted an arbitration proceeding against Parthenon, Henderson, and Robinson. The proceeding was brought under a mandatory arbitration clause in Parthenon's operating agreement. In the arbitration proceeding, the appellant asserted— among other things—that Henderson had breached his fiduciary duty of loyalty.

On June 18, 2019, the arbitrator commenced a 3-day arbitration hearing. After considering the evidence presented by the parties, the arbitrator ruled in favor of Parthenon and Robinson. However, the arbitrator concluded that Henderson had breached his fiduciary duty of loyalty and granted the appellee an award in the amount of $283,333 plus interest at the rate of 6% per annum.

Specifically, the arbitrator found that "[t]he unfairness relating to the transfer of the Property arose not from the fact of the transfer, or from the purchase price per se . . . but from the terms and subsequent handling of the loan from North Village Fund to NV Lenexa Land Holdings . . . ." The arbitrator reasoned that because North Village Fund is

owned and managed by Parthenon, the harm was suffered by Parthenon's members—which included the appellant.

In determining the amount of the award, the arbitrator explained:

"North Village Fund/Parthenon no longer have the Property and instead have a non-paying, unsecured $850,000 Promissory Note with an illusory due date which may be extended into perpetuity. By putting North Village Fund and Parthenon in that position, Henderson breached his fiduciary duties. The injury to Parthenon member NVLCC is that it has been deprived of its one-third share of the proceeds from the sale of the Property. Thus, an award against Henderson and in favor of NVLCC is appropriate in the amount of 33.33% of $850,000, or $283,333, with interest at the annual rate of 6% from March 14, 2017 until full payment."

The arbitration award was not appealed. Moreover, the appellant obtained a confirmation of the award in Johnson County District Court. Accordingly, the appellant has an in personam judgment against Henderson for the amount of the award.

On November 2, 2018, while the arbitration proceeding was still pending, the appellant filed this action asserting several claims against the appellee seeking to hold it jointly and severally liable for Henderson's breach of fiduciary duty. During the pendency of this action, the appellee sold the real property to a third party for $2,150,000. So that the sale could close, the appellant agreed to release the lis pendens against the real property that resulted from the filing of this action. In exchange, the appellee agreed to place $350,000 from the sale proceeds into escrow pending the outcome of this case. Consequently, at closing $1,019,500 was paid to North Village Fund to pay off the amount due under the promissory note, $350,000 was placed into escrow, and $598,498.27 was paid to the appellee. Ultimately, the appellant received a check in the amount of $20,701.88 as a return on its initial investment of $3,333.34.

6

The district court conducted a bench trial in this case on April 8 and 9, 2021. When the matter came to trial, the appellant had only two remaining claims against the appellee—a claim for civil conspiracy and a claim for unjust enrichment. The district court also considered the appellee's counterclaims against the appellant as well as the appellee's third-party claims against the Sobeks. The only remaining claim material to the issue on appeal is the civil conspiracy claim.

Prior to trial, the parties stipulated to the findings of fact set forth in the arbitration award. In addition, the parties presented the testimony at trial of Sobek, Henderson, and Talbert regarding the convoluted web of transactions that occurred relating to the purchase, proposed development, and transfer of the real property. Following the trial, counsel for the parties presented closing arguments as well as proposed findings of fact and conclusions of law to the district court.

On June 29, 2021, the district court filed a comprehensive 22-page journal entry of judgment in favor of the appellee. Significant to this appeal, the district court ruled that the appellant had failed to establish the essential elements of a civil conspiracy. First, the district court concluded that the appellant had failed to prove that "two or more parties" participated in a conspiracy. Second, the district court concluded that the appellant had failed to prove that the alleged conspirators had committed "an unlawful act resulting in an unlawful result."

In particular, the district court ruled the element of "two or more persons" was not satisfied because—at all times relevant to this case—Henderson was acting in his capacity as manager of the appellee and in his capacity as manager for North Village Fund. The district court reasoned that "there is no evidence that 'two or more persons' conspired" because "there were two entities, managed by the same person, who signed and approved the transaction in question." As a result, "the transfer of the Property was neither contemplated nor executed by and between 'two or more persons.'" In addition,

7

the district court found that the element of an "unlawful overt act" was not satisfied because the appellant had not proved that the appellee committed an act independent of Henderson's breach of fiduciary duty.

In reaching its decision, the district court explained:

"72. 'For a civil conspiracy claim to be actionable, Kansas law requires [the] "commission of some wrong giving rise to a cause of action independent of the conspiracy."' . . . Therefore, Defendant NV Lenexa must have personally committed an unlawful act for a claim of civil conspiracy to exist.

"73. Here, there was no unlawful act which produced an unlawful result. The Property was transferred to Defendant NV Lenexa after a foreclosure action was commenced by Sagebrush on the Property. With a pending foreclosure action against the Property, Henderson, via North Village Fund, transferred the Property to Defendant NV Lenexa under the Note so that the Property could be developed. This was a fair market transaction and, according to the arbitrator, was not done for any improper purpose. If the transaction was not improper, it cannot be considered to be an unlawful act with an unlawful result.

. . . .

"76. There was no determination by the arbitrator of any unlawful act by Defendant NV Lenexa. Quite the contrary, Defendant NV Lenexa paid fair market value for the Property. Plaintiff is attempting to hold Defendant NV Lenexa liable under a standard that requires an unlawful act that did not occur. Moreover, the arbitrator found the sole 'wrong' was a breach of the fiduciary duty by Henderson to Parthenon, which does not involve Defendant NV Lenexa."

The district court noted that the "only party to this action that gained from the sale of the property was Plaintiff via Parthenon—which received a significant return on its investment." The district court also dismissed the appellee's counterclaims and third-party claims. Likewise, the district court further ordered that the $350,000 being held in escrow

from the sale of the real property be remitted to the appellee based on an agreement by the parties regarding the outcome of this litigation.

After the district court denied its motion to alter or amend the judgment, the appellant timely appealed to this court.

ANALYSIS

*Standard of review*

After hearing the testimony, reviewing the documentary evidence, considering the stipulated facts, and listening to the arguments of counsel, the district court ruled that the appellant had failed to meet its burden to prove the essential elements of civil conspiracy. In reaching its decision, the district court appropriately entered findings of fact and conclusions of law. As a result, because this appeal involves a mixed question of fact and law, we apply a bifurcated standard of review.

We review the district court's findings of fact under a substantial competent evidence standard. In doing so, we disregard any conflicting evidence or other inferences that might be drawn from the evidence. Next, we exercise an unlimited standard in reviewing the district court's conclusions of law. See *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017).

*Civil Conspiracy Claim*

On appeal, the appellant contends that the district court erred in finding that it failed to meet its burden of proving the essential elements necessary to establish a civil conspiracy. Under Kansas law, the appellant was required to prove each of the following essential elements of a civil conspiracy at trial: "'(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one

9

or more unlawful overt acts; and (5) damages as the proximate result thereof.' [Citations omitted.]" *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 927, 811 P.2d 1220 (1991); see *Mid-Continent Anesthesiology, Chtd. v. Bassell*, 61 Kan. App. 2d 411, 433, 504 P.3d 1069 (2021), *rev. denied* 315 Kan. 968 (2022). A failure to prove any one of these elements is fatal to the appellants claim. See *Stoldt v. Toronto*, 234 Kan. 957, 967-68, 678 P.2d 153 (1984).

In other words, a civil conspiracy requires a "'concert of action'" between more than one person. See *Aeroflex Wichita v. Filardo*, 294 Kan. 258, 275, 275 P.3d 869 (2012). Here, a review of the record reveals that the district court carefully considered the evidence presented by the parties and determined that the appellant had failed to establish that "two or more persons" had conspired to commit an unlawful act. We conclude that this finding is based on substantial competent evidence in the record on appeal.

Important to the determination of whether two or more persons acted in concert is the alleged unlawful act. Appellant's argument has evolved, and it now contends that "the unlawful overt act in furtherance of the conspiracy was the stipulated breach by Henderson of his fiduciary duty of loyalty to Plaintiff" rather than the property transfer itself. Therefore, the two or more persons required to form a conspiracy must be Henderson and appellee, acting through Henderson, and not the two entities that were parties to the property transfer.

Corporations are separate and distinct legal entities that act through their officers, directors, and agents. See *Iola State Bank v. Biggs*, 233 Kan. 450, 456, 662 P.2d 563 (1983); *Mid-Continent Anesthesiology*, 61 Kan. App. 2d at 428. As a creation of legal fiction, a corporation can act only through natural persons. See *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 680, 896 P.2d 1012 (1995); *Lokay v. Lehigh Valley Co-Op. Farmers, Inc.*, 342 Pa. Super. 89, 97, 492 A.2d 405 (1985) ("A corporation is a creature of legal fiction, and must 'act' through its officers, directors or other agents."). As

10

fictional creatures, corporate entities do not—and cannot—have a state of mind. Instead, the knowledge and state of mind of their agents are imputed to them. See *Holley v. Allen Drilling Co.*, 241 Kan. 707, Syl. ¶ 5, 740 P.2d 1077 (1987) (knowledge obtained by agent acting within scope of authority is the knowledge of the principal).

Similarly, a limited liability company is a distinct legal entity that is a creature of statute. See K.S.A. 2021 Supp. 17-7662 et seq. We recognize that limited liability companies are hybrids to the extent that they are treated like corporations for liability purposes and treated like partnerships for tax purposes. Nevertheless, they can only act through natural persons. K.S.A. 2021 Supp. 17-7663(l) (defining "person" to include a limited liability company); see Black's Law Dictionary 340 (10th ed. 2014) (limited liability company is "[a] statutorily authorized business entity that it characterized by limited liability for and management by its members and managers, and taxable as a partnership for federal income-tax purposes").

Like a corporation, a limited liability company can act solely through its duly authorized agents. See *Dean Operations*, 257 Kan. at 680; *Monarch Transport, LLC v. FKMT, LLC*, No. 105,487, 2012 WL 3629861, at *10 (Kan. App. 2012) (unpublished opinion) (corporation is fictional person that may act only through natural persons such as its officers and agents); *Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F.Supp.2d 1200, 1227 (D. N.M. 2011) (corporation is artificial entity that may only act through its agents). Moreover, like a corporation, a limited liability company does not—and cannot—have a state of mind. Thus, just like corporate entities, the knowledge and state of mind of their agents are imputed to limited liability companies. See *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 956, 335 P.3d 1178 (2014) (when agent acts with principal's authorization, the agent's acts are generally imputed to principal); *City of Arkansas City, v. Anderson*, 243 Kan. 627, 635, 762 P.2d 183 (1988) ("law of agency generally imputes the knowledge of an agent to the principal").

11

Although the district court did not reference the intracorporate doctrine in its findings, the appellant argues that it was somehow misapplied in this case. However, the doctrine is quite applicable when determining whether Henderson (as agent of the appellee) and the appellee (as a creation of legal fiction) can conspire together to breach Henderson's fiduciary duty to appellant. Under the intracorporate doctrine, a corporation or other legal entity cannot conspire with its own agents because this would be the same as conspiring with oneself. See *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). The intracorporate doctrine is based on the basic agency principles discussed above that the acts of the agents of a legal entity are deemed to be the acts of the legal entity. So, the acts of the agent and the acts of the legal entity are considered to be the actions of a single legal actor. See *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). Accordingly, such actions do not meet the element of "two or more persons" in a claim of civil conspiracy.

In *York v. InTrust Bank, N.A.*, 265 Kan. 271, 293, 962 P.2d 405 (1998), the Kansas Supreme Court similarly recognized that "agents . . . acting only in their official capacities on behalf of a corporate defendant and whose acts are considered those of the corporation may not form a conspiracy with the corporation." We find the same to be true of agents acting on behalf of a limited liability company. Consequently, we conclude that because there is substantial competent evidence in the record on appeal to establish that Henderson was acting in his official capacity as an agent of the appellee at all times material to this appeal, the district court correctly determined that the appellant failed to meet its burden of proving a conspiracy between "two or more persons" as required by Kansas law.

We note that courts in other jurisdictions have reached similar conclusions. In *Elliott v. Tilton*, 89 F.3d 260 (5th Cir. 1996), the United States Court of Appeals for the Fifth Circuit found that corporate agents of an incorporated church could not be liable for civil conspiracy under Texas law—which has the same elements as Kansas—because the

church could not conspire with itself. 89 F.3d at 265. Although the *Elliott* court noted the law recognizes an exception when an agent is not acting in the best interests of its principal, it found no evidence that the agents were not acting for the benefit of the corporation. 89 F.3d at 265. See *Vulcan Materials Co. v. Atofina Chemicals Inc.*, 355 F.Supp.2d 1214 (D. Kan. 2005) (corporation cannot conspire with itself).

The appellant cites *York* for the proposition that the element of "two or more persons" can be satisfied when a corporation conspires with its own agents. 265 Kan. at 293. But the facts in *York* are substantially different from those in this case. As our Supreme Court found in *York*, the alleged agents—an independent contractor and a licensed realtor—were "clearly separate entities with contractual relationships with each other and with [the corporation]. In pursuing the conspiracy at issue, *they were not acting in any capacity as officials of [the corporation]* so that their activities could be deemed acts of [the corporation]." 265 Kan. at 293. As such, our Supreme Court concluded that the asserted agents were outsiders "acting with their own individual interests involved." 265 Kan. at 294.

In contrast, there is substantial competent evidence in the record to establish that Henderson is the sole manager and duly appointed agent of the appellee. Further, the appellee has failed to point us to any evidence in the record that proves Henderson was not acting in the best interests of the appellee in approving the real estate transaction. As the district court found, "Henderson did not receive any compensation and the transfer of the Property . . . was undertaken by Parthenon (the manager of North Village Fund) as permitted under the Parthenon Operating Agreement." Likewise, the district court pointed out that "[t]he transfer was made to preserve the asset (the Property) and prevent a foreclosure."

In summary, the appellant fails to point to any evidence in the record to establish that Henderson was acting outside the scope of his authority when he signed the real

13

estate sale agreement. As the arbitrator found, "Henderson didn't gain any 'property' [from the sale of the property to the appellee], and whether he gained any 'profit or benefit' is questionable and not proved." Of course, this factual finding—as well as others made by the arbitrator—was stipulated to by the parties prior to trial.

We, therefore, conclude that the district court did not err in determining that the appellant failed to establish the essential element of "two or more persons" conspiring to commit an unlawful act. Because the failure to establish an essential element prevents the appellant from prevailing on its claim of civil conspiracy, it is not necessary for us to reach the remaining arguments raised by the parties in their briefs.

Affirmed.